# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 2, 2023         Decided July 7, 2023

No. 22-7083

MARY OFISI, ET AL.,
APPELLANTS

v.

BNP PARIBAS, S.A.,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-02010)

---

*David Dickens* argued the cause and filed the briefs for appellants.

*Carmine D. Boccuzzi Jr.* argued the cause for appellees. With him on the brief was *Mark E. McDonald*.

*Marc J. Gottridge* was on the brief for *amicus curiae* Institute of International Bankers in support of appellees.

Before: RAO, *Circuit Judge*, and SENTELLE and ROGERS, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*:  Appellants are survivors and family members of victims of the 1998 U.S. embassy attacks in Kenya and Tanzania.  They bring suit against Appellee BNP Paribas, S.A. ("BNPP"), an international bank, alleging the bank acted in support of the terrorists who committed those attacks.  The United States District Court for the District of Columbia granted Appellee's motion to dismiss under Rule 12(b)(6).  For the reasons set forth below, we affirm the district court on all counts.

## I. Background and Procedural Posture

As this is an appeal from the grant of a motion to dismiss, "the relevant facts are those alleged in the complaint, taken in the light most favorable to the plaintiff and with all reasonable inferences drawn in his favor." *Hurd v. District of Columbia*, 864 F.3d 671, 675 (D.C. Cir. 2017).  The following facts therefore draw from Plaintiff-Appellants' Complaint.

This case arises from the 1998 embassy bombings in Kenya and Tanzania, perpetrated by Usama bin Laden and al-Qaeda, that killed over 200 people and wounded thousands.  In the years leading up to the attack, the country of Sudan welcomed al-Qaeda to its borders, promising shelter and other benefits to the terrorist organization. As a result of Sudan's state-sponsored terrorism, the United States imposed an embargo on all goods and services to Sudan, including financial services, in 1997.

Appellee BNPP is a French bank headquartered in Paris with branches around the world, including in New York. In 2014 United States court proceedings, BNPP admitted to flouting U.S. sanctions on Sudan by establishing a banking relationship with the country in 1997. Sudan instructed its Central Bank and other commercial banks to use BNPP as their sole correspondent bank in Europe. In this capacity, BNPP allowed Sudan to establish bank accounts in U.S. dollars, in violation of the sanctions, and hid U.S. dollar transactions to and from Sudan. One of the financial institutions corresponding with BNPP was Al-Shamal, a Sudanese bank stabilized by a $50 million investment from bin Laden and holder of bin Laden and al-Qaeda accounts. Appellants originally named Al-Shamal in this action, but they have since dropped Al-Shamal from this suit after reaching a settlement with the Government of Sudan.

Appellants represent over 500 victims of the 1998 embassy attacks, including U.S. citizens, U.S. contractors, and their surviving family members. Appellants' theory of BNPP's liability follows this causal chain: BNPP, as Sudan's only connection to worldwide financial markets in the years before the 1998 attacks, violated U.S. sanctions by supporting Sudan's economy and banking system, including Al-Shamal Bank. Al-Qaeda terrorists banked at Al-Shamal. Without al-Qaeda's access to foreign markets through Al-Shamal, Appellants argue that al-Qaeda would have lacked the capital to carry out the bombings.

Appellants also argue the existence of a larger conspiracy between BNPP and al-Qaeda. According to Appellants' theory, BNPP's support of the Sudanese financial sector and al-Qaeda's 1998 attacks shared the same goal of flouting U.S. sanctions. Therefore, Appellants argue, BNPP

should hold responsibility for the acts, including the bombings, perpetrated in furtherance of that goal.

Appellants brought suit in the district court on numerous grounds including, as relevant to this appeal: federal common law claims of (1) conspiracy and (2) aiding and abetting; (3) aiding and abetting under the Alien Tort Statute (ATS); and (4) several statutory violations under the Anti-Terrorism Act (ATA). The district court granted Appellee's motion to dismiss all of Appellants' claims. *Ofisi v. BNP Paribas, S.A.*, 278 F. Supp. 3d 84, 112 (D.D.C. 2017), *order vacated in part*, 285 F. Supp. 3d 240 (D.D.C. 2018). On appeal, Appellants allege error in the dismissal of each of the claims. For the reasons set forth below, we reject Appellants' arguments as to each of their claims.

## II. Discussion

"We review de novo the district court's dismissal of the . . . claims under Rule 12(b)(6)." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). As referenced above, we "treat the complaint's factual allegations as true . . . and . . . grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Id.* (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).

### i. Common Law Conspiracy

Appellants first allege the existence of a civil conspiracy between al-Qaeda, BNPP, Al-Shamal Bank, and Sudan. To establish common law conspiracy, a party must allege "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; [and] (4)

which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). Appellants contend that the common scheme consisted of evading U.S. sanctions on Sudan, and both BNPP's establishment of banking relations with Sudanese financial institutions and al-Qaeda's embassy bombings furthered that goal.

The district court held that BNPP and al-Qaeda shared no common scheme to bomb the U.S. embassies, thus failing the fourth requirement of *Halberstam*'s conspiracy test. *Ofisi*, 278 F. Supp. 3d at 110. Instead, the court held that the only scheme common to al-Qaeda, BNPP, and Al-Shamal Bank was to circumvent U.S. sanctions, and no private cause of action exists for sanctions violations. *Id*. The district court also emphasized that Appellants did not plausibly allege that BNPP knew of any larger common scheme between Sudan and al-Qaeda to perpetrate these attacks. *Id*.

We agree with the district court. The proper framework with which to evaluate secondary liability claims under the common law is *Halberstam*, as the district court correctly noted and Appellants acknowledge. And like the district court, we conclude that Appellants did not plausibly allege that BNPP and al-Qaeda shared a common scheme under *Halberstam.* Al-Qaeda's objective was to blow up U.S. embassies in Africa. BNPP's objective was to provide banking services, admittedly in violation of the U.S. embargo, to Sudan. Appellants' attempt to connect these two vastly different goals, by claiming the parties entered a common scheme to evade U.S. sanctions, is attenuated at best.

Our decision in *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856 (D.C. Cir. 2022), is instructive. In *Bernhardt*, we held that appellants could not maintain a conspiracy claim,

evaluated under *Halberstam*, against global bank HSBC because

> HSBC was trying to make "substantial profits" by evading sanctions, whereas al-Qaeda sought to "terrorize the U.S. into retreating from the world stage"; "use long wars to financially bleed the U.S. while inflaming anti-American sentiment"; "defend the rights of Muslims"; and "obtain global domination through a violent Islamic caliphate." These objectives are wholly orthogonal to one another.

*Id.* at 873 (quoting *Bernhardt* appellants' complaint).

Appellants attempt to differentiate *Bernhardt.* They assert that appellants in that case failed to allege an overt act under *Halberstam* because al-Qaeda's bombing did not further HSBC's objective to evade U.S. sanctions. By contrast, Appellants argue in this case that al-Qaeda's embassy bombings shared the same objective as BNPP of evading U.S. sanctions, and that the bombings furthered that goal. Appellants heavily rely on evidence presented by federal prosecutors in a 2010 criminal trial for a co-conspirator that one of the many goals of the embassy bombings was "[t]o cease the campaign for the annihilation and humiliation that are being waged by the United States against a number of Islamic peoples under the titles of blockades or economic sanctions that has led to the deaths of hundreds of thousands and the hunger of millions of Muslims." A47–48 (quoting Trial Tr., *United States v. Ahmed Ghailani*, No. 98-cr-1023 (S.D.N.Y. Oct. 20, 2010), at 897).

Appellants' arguments are unpersuasive. They do not plausibly allege that al-Qaeda's embassy bombings in any way

furthered BNPP's goal of evading U.S. sanctions on Sudan. Appellants themselves concede that "BNPP did not share [al-] Qaeda's desire to kill American citizens and citizens of their allies." A45 (Compl. ¶ 3). At bottom, al-Qaeda sought to brutally murder employees of U.S. embassies. BNPP sought to evade U.S. sanctions on Sudan by establishing banking relations with that country. As in *Bernhardt*, these goals are simply orthogonal to one another.

Appellants' common law conspiracy claim fails for another, independent reason; namely, Appellants do not tether their claim to an underlying, actionable tort. "Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort." *Halberstam*, 705 F.2d at 479. As the district court correctly noted, there is no private right of action for violation of banking sanctions under the common law. *Ofisi*, 278 F.Supp 3d. at 110. Appellants' common law conspiracy claim fails.

### ii. Common Law Aiding and Abetting

Appellants next assert common law aiding and abetting liability for BNPP. To establish this, "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Halberstam*, 705 F.2d at 477. As with their conspiracy claim, Appellants contend that BNPP "hatched a secret and illegal scheme" to evade U.S. sanctions by providing financial support to Sudanese banks, which in turn assisted al-Qaeda in funding the embassy bombings. Appellant Br. 33.

8

The district court dismissed this claim. It held that BNPP never knowingly or substantially assisted in the bombings under *Halberstam*'s third requirement, as Appellants offered no well-pled allegations that BNPP directly or indirectly funded the attacks. *Ofisi*, 278 F. Supp. 3d at 111.

Appellants first contend the district court erred by requiring them to show under *Halberstam*'s general awareness requirement that BNPP had an "intent and desire to make the [criminal] venture succeed." Appellant Br. 31–32 (alteration in original) (quoting *Ofisi*, 278 F. Supp. 3d at 111 n.23). They instead cite this Court's recent case of *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204 (D.C. Cir. 2022), for the proposition that "[t]here is no specific intent requirement" to allege general awareness for aiding and abetting liability, Appellant Br. 32 (quoting *Atchley*, 22 F.4th at 220). Appellants secondly argue that they plausibly allege BNPP's aiding and abetting liability under *Halberstam*'s knowing and substantial assistance requirement. We reject both arguments.

1. *General awareness*

First, regarding general awareness, "a defendant may be liable for aiding and abetting an act of terrorism if it was generally aware of its role in an overall illegal activity from which an act of international terrorism was a foreseeable risk." *Atchley*, 22 F.4th at 220 (quoting *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 860 (2d Cir. 2021) (internal quotation marks omitted)). Additionally, when an intermediary between the alleged abettor and terrorist is involved, as here, *Bernhardt* instructs that

9

the general awareness requirement is satisfied if (1) the defendant was aware of the intermediary's connection to the terrorist organization, and (2) the intermediary is "so closely intertwined" with the terrorist organization's illegal activities as to give rise to an inference that the defendant was generally aware of its role in the organization's terrorist activities.

47 F.4th at 867–68 (quoting *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 501 (2d Cir. 2021)).

More recently, the Supreme Court in *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206 (2023), considered aiding and abetting liability for terrorism under the ATA. In that case, appellants brought suit against Twitter and other social-media platforms for failing to stop "ISIS [from using] defendants' social-media platforms to recruit new terrorists and to raise funds for terrorism." *Id.* at 1215. In evaluating appellants' claims, the Court acknowledged that "[*Halberstam*'s] precise three-element and six-factor test thus may not be entirely adequate to resolve these new facts." *Id.* at 1220. Instead, the Court reasoned, it "must ascertain the 'basic thrust' of *Halberstam*'s elements and determine how to 'adap[t]' its framework to the facts before us today." *Id.* (quoting *Halberstam*, 705 F.2d at 478 n.8). The Court emphasized the need for some culpable conduct in aiding and abetting cases, "lest mostly passive actors *like banks* become liable for all of their customers' crimes by virtue of carrying out routine transactions." *Id.* at 1222 (emphasis added) (citations omitted). In other words, the Court continued, aiding and abetting "refers to a conscious, voluntary, and culpable participation in another's wrongdoing." *Id.* at 1223.

Of course, this does not mean, as the Court cautioned, that the defendant must "have known 'all particulars of the primary actor's plan.'" *Id.* at 1224 (quoting Restatement (Third) of Torts: Intentional Torts to Persons § 10, Comment c, p. 104 (Tent. Draft No. 3, Apr. 6, 2018)). For example, the Court continued, "a defendant might be held liable for aiding and abetting the burning of a building if he intentionally helped others break into the building at night and then, unknown to him, the others lit torches to guide them through the dark and accidentally started a fire." *Twitter*, 143 S. Ct. at 1224–25 (citations omitted). The "conceptual core" of aiding and abetting liability rather is "that the defendant consciously and culpably 'participate[d]' in a wrongful act so as to help 'make it succeed.'" *Id*. at 1223 (quoting *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949)).

We note that cases like *Bernhardt*, *Atchley*, and *Twitter* evaluate claims under the Anti-Terrorism Act, not common law. However, these courts use *Halberstam*, a common law case, as the framework for statutory liability, pursuant to a 2016 amendment to the ATA. *See* Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, § 2(a)(5), 130 Stat. 852, 852 (2016) ("*Halberstam* . . . has been widely recognized as the leading case regarding [f]ederal civil aiding and abetting and conspiracy liability, including by the Supreme Court of the United States, [and] provides the proper legal framework for how such liability should function."); *see also Twitter*, 143 S. Ct. at 1219–20; *Bernhardt*, 47 F.4th at 867 ("The ATA does not provide a definition of aiding and abetting liability, but instead incorporates the analysis in *Halberstam* . . . ."); *Atchley*, 22 F.4th at 215. We therefore use these cases to evaluate Appellants' common law aiding and abetting claim.

Appellants do not plausibly allege BNPP was "generally aware of its role in an 'overall illegal activity' from

which an 'act of international terrorism' was a foreseeable risk," *Atchley*, 22 F.4th at 220 (quoting *Kaplan*, 999 F.3d at 860), or that it "consciously and culpably 'participate[d]' in a wrongful act so as to help 'make it succeed,'" *Twitter*, 143 S. Ct. at 1223 (alteration in original); *see also Ofisi v. BNP Paribas, S.A.*, No. 15-2010, 2018 WL 396234, at *5 (D.D.C. Jan. 11, 2018). Under our precedent in *Halberstam* and *Atchley*, Appellants are correct that no specific intent for the precise criminal venture to succeed is required to allege general awareness in aiding and abetting liability. *Atchley*, 22 F.4th at 223; *see also Twitter*, 143 S. Ct. at 1219 (discussing *Halberstam* for the proposition that the defendant "was not . . . even allegedly aware of the murder. But the facts made clear that '[s]he was a willing partner in [Welch's] criminal activities.'" (alteration in original) (citation omitted) (quoting *Halberstam*, 705 F.2d at 474)). *Halberstam*'s language regarding the "intent and desire to make the venture succeed" was in the context of the knowing and substantial assistance factors under aiding and abetting's *third* requirement. *Halberstam*, 705 F.2d at 488; *see also infra* Part II.ii.2.; *see also Twitter*, 143 S. Ct. at 1229 ("The 'knowing' part of that inquiry is therefore designed to capture the defendants' state of mind with respect to their actions and the tortious conduct (even if not always the particular terrorist act), not the same general awareness that defines *Halberstam*'s second element."). That general awareness does not require a specific intent does not mean, as Appellants seem to believe, that aiding and abetting liability contains *no* knowledge requirement. Aiding and abetting "requires more than the provision of material support to a terrorist organization." *Kaplan*, 999 F.3d at 860 (emphasis omitted) (quoting *Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018)). And as the Supreme Court recently reiterated, "the concept of 'helping' in the commission of a crime—or a tort—has never been boundless." *Twitter*, 143 S. Ct. at 1220. Instead, aiding and abetting liability requires a

showing of "a conscious, voluntary, and culpable participation in another's wrongdoing." *Id.* at 1223.

Appellants simply do not plausibly allege that BNPP was generally aware of any role it allegedly played in the U.S. embassy bombings or that it consciously participated in any act to make the bombings succeed. Nor do they plausibly allege that BNPP was aware of the connection between Al-Shamal Bank, the intermediary between BNPP and al-Qaeda, and al-Qaeda. *See Bernhardt*, 47 F.4th at 867–68; *see also Ofisi*, 278 F. Supp. 3d at 101 ("[T]he complaint does not contain any detailed factual allegations that BNPP knew about [Al-Shamal's] supposed connections to al Qaeda . . . . [I]t appears that the relationship between Al Shamal and [b]in Laden was not widely reported until *after* the 1998 embassy bombings."). Appellants therefore fail to allege that BNPP was "generally aware of [its] role as part of an overall illegal or tortious activity." *Halberstam*, 705 F.2d at 477.

### 2. *Knowing and Substantial Assistance*

Second, we agree with the district court that Appellants do not plausibly allege that BNPP knowingly and substantially assisted al-Qaeda in its attacks. As both parties agree, *Halberstam* identifies six factors for evaluating this requirement: "[1] the nature of the act encouraged; [2] the amount [and kind] of assistance given; [3] the defendant's absence or presence at the time of the tort; [4] his relation to the tortious actor; . . . [5] the defendant's state of mind"; and "[6] [the] duration of the assistance provided." *Halberstam*, 705 F.2d at 483–84 (alteration in original).

None of these factors favors Appellants. First, Appellants do not allege BNPP "encouraged" the U.S. embassy

attacks by al-Qaeda. Second, Appellants do not allege that *any* of the financial assistance provided by BNPP to Sudanese banking institutions flowed to al-Qaeda to fund its murderous plots. Third, Appellants do not allege, and indeed cannot plausibly allege, that BNPP was present during the bombings. Fourth, while Appellants spend a majority of their briefs attempting to connect BNPP with al-Qaeda, they fail to plausibly allege the two entities had any relationship whatsoever with one another. Through a series of attenuated links, Appellants connect BNPP through its financial support of Sudan to al-Qaeda, which banked in Sudan, and thus to al-Qaeda's bombings. This "causal" chain is simply too remote. *Cf. Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91, 100 (D.D.C. 2002) (discussing requirements for establishing chain conspiracy). Fifth, Appellants fail to plausibly allege BNPP knew of the plot to bomb the embassies or intended to support al-Qaeda in its mission. *See Twitter*, 143 S. Ct. at 1230 (referring to defendants' state of mind under *Halberstam*'s fifth element as "their undisputed lack of intent to support [the terrorist organization]."). Finally, Appellants do not plausibly allege any assistance from BNPP to al-Qaeda. Even if Appellants had, that "assistance" lasted a short period of time between the 1997 sanctions and 1998 bombings. Appellants simply cannot bend this final consideration in their favor, especially in light of this Court's determination in *Bernhardt* that even "lengthy business relationships with the foreign banks" did not satisfy *Halberstam*'s final factor. 47 F.4th at 872 ("Because the foreign banks are global financial institutions with legitimate operations and uncertain ties to al-Qaeda, we cannot infer substantial assistance to al-Qaeda from [appellee's] lengthy business relationships with the foreign banks.").

In sum, Appellants' common law aiding and abetting claim was properly dismissed by the district court.

### iii. Aiding and Abetting under the Alien Tort Statute

Appellants also allege aiding and abetting liability under the Alien Tort Statute. Applying the standards of customary international law, the district court dismissed this claim, finding Appellants failed to plausibly allege either the proper *actus reus* or *mens rea* requirements. *Ofisi*, 278 F. Supp. 3d at 109. Appellants contend the district court erred by requiring them to plead a "higher burden" than the law requires for those elements. Appellant Br. 39.

In fact, Appellants' aiding and abetting claim under the ATS fails for a much simpler reason. The ATS is a purely jurisdictional statute and does not itself create a private cause of action. 28 U.S.C. § 1350 ("The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."); *see also Sosa v. Alvarez-Machain*, 542 U.S. 692, 714 (2004). And after the district court's 2017 decision in this case, the Supreme Court held that the ATS's jurisdiction does not extend to foreign corporate defendants. *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1407 (2018) ("[F]oreign corporations may not be defendants in suits brought under the ATS."). BNPP, an international bank headquartered in Paris, France, is a foreign corporation, which Appellants admit in their own Complaint. A51, Compl. ¶ 18 ("BNPP is a French multinational bank, incorporated under the laws of France, and headquartered in Paris, France."). Therefore, Appellants cannot maintain a claim against BNPP within the jurisdiction created by the ATS.

While Appellants fail to grapple with *Jesner* in their opening brief, on reply, they unconvincingly argue that BNPP

*is* a U.S. person because it has American branches and a North American headquarters in New York. For further evidence, Appellants cite BNPP's guilty plea before the District Court for the Southern District of New York in 2014 for economic sanctions violations. They also argue that the definition of "U.S. person" from the 1997 Executive Order for Sudanese sanctions encompasses BNPP, and that BNPP is a U.S. person under 18 U.S.C. § 2332d(b)(2), which defines a U.S. person as "(A) United States citizen or national; (B) permanent resident alien; (C) juridical person organized under the laws of the United States; or (D) any person in the United States." *Id.*

None of these arguments is persuasive. The Southern District of New York attained jurisdiction over BNPP for its 2014 guilty plea not because it defined BNPP as a U.S. person, but because some of BNPP's illegal sanction-evading conduct occurred at its New York branch. *See* Gov't Memo in Support of the Court's Acceptance of the Plea Agreement, *United States v. BNP Paribas S.A.*, No. 1:14-cr-00460 (S.D.N.Y. 2014), at 5 ("U.S. sanctions laws applied to BNPP when it processed transactions through its U.S. branch in New York . . . ."); *see also Ofisi*, 278 F. Supp. 3d at 99. Further, assuming that § 2332d(b) applies, the district court correctly noted that BNPP is not a "juridical person organized under the laws of the United States" under § 2332d(b)(2)(C) because BNPP is organized *under the laws of France*, again as Appellants' Complaint acknowledges. *Ofisi*, 278 F. Supp. 3d at 98–99 (emphasis omitted); *see also* A51, Compl. ¶ 18. Nor is BNPP "any person in the United States" under subparagraph (D) because, as the district court correctly reasoned, "interpreting subparagraph (D) to apply to juridical persons would render subparagraph (C) superfluous because companies organized under the laws of the U.S. are by definition located in the U.S., as that is their place of incorporation." *Ofisi*, 278 F. Supp. 3d at 99. Finally, we agree with the district court that the 1997 Executive Order

does not encompass BNPP within its definition of "U.S. person." *See id.*

BNPP is a French bank, headquartered in Paris, under the laws of France. It is a foreign corporation, and pursuant to the Supreme Court's *Jesner* opinion, Appellants cannot maintain a cause of action against it under the Alien Tort Statute.

iv. <u>Statutory Anti-Terrorism Act (ATA) Claims</u>

Appellants finally allege two claims against BNPP under the ATA, 18 U.S.C. § 2333(a), which supplies a private cause of action for victims of international terrorism, *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 270 (D.C. Cir. 2018); *see also* 18 U.S.C. § 2333(a). Appellants specifically allege claims that BNPP materially supported terrorists, § 2339A(a), and that BNPP was a U.S. person engaged in financial transactions with a country supporting terrorism, § 2332d(a). The district court dismissed the § 2339A(a) claims because Appellants failed to plausibly allege that BNPP knew or should have known its transactions would end up supporting al-Qaeda, *Ofisi*, 278 F. Supp. 3d at 100, and for lack of proximate causation between BNPP's actions and the embassy bombings, *id.* at 102–03. The court relied in part on its factually similar case of *Owens v. BNP Paribas S.A.*, 235 F. Supp. 3d 85 (D.D.C. 2017), *aff'd*, 897 F.3d 266 (D.C. Cir. 2018), emphasizing that "the fact that money was transferred to or for a state sponsor of terrorism makes it more likely that the money was used for terrorism than if the transfers had been to a state that does not sponsor . . . terrorism." *Ofisi*, 278 F. Supp. 3d at 102 (quoting *Owens*, 235 F. Supp. 3d at 99). Still, Sudan "is a government, and as such it has many legitimate agencies, operations, and programs to fund." *Ofisi*, 278 F. Supp. 3d at 102 (quoting *Rothstein v. UBS*

*AG*, 708 F.3d 82, 97 (2d Cir. 2013)).  Therefore, "[p]rocessing funds for Sudan [or Sudanese commercial banks] is not the same as processing funds for a terrorist organization or a terrorist front." *Ofisi*, 278 F. Supp. 3d at 102 (quoting *Owens*, 235 F. Supp. 3d at 99).  The court also dismissed Appellants' § 2332d claims after finding that BNPP did not qualify as a United States person as defined in the statute.  *Ofisi*, 278 F. Supp. 3d at 98–100.

We agree with the district court on all counts.  First, as we discussed extensively above, BNPP is not a U.S. person and therefore Plaintiffs have no cause of action against BNPP under § 2332d.  *See supra* Part II.iii.

Second, to maintain *any* claim under the ATA, Appellants must plausibly allege (1) an injury to a U.S. national, (2) by act of international terrorism, and (3) proximate causation.  *See Atchley*, 22 F.4th at 226; *see also Ofisi*, 278 F. Supp. 3d at 96.  Putting aside any knowledge requirements, any hope of Appellants plausibly alleging proximate causation between BNPP's sanctions-evading support of Sudan and al-Qaeda's embassy bombings is thoroughly dashed by this Court's *Owens* case, decided after the district court's decision in this case.  897 F.3d 266.  Appellants in *Owens* and in this case filed their complaints within two weeks of one another; both cases were heard and dismissed by the same district court judge; and we have since upheld that court's *Owens* ruling.  *Id.* at 276. So with good reason, we hold that *Owens* precludes Appellants' ATA claims in this case, as well.

*Owens* presents nearly identical facts.  The *Owens* appellants were victims or family members of victims of the U.S. embassy bombings by al-Qaeda in Kenya and Tanzania in 1998; they brought suit against BNPP for establishing banking relations with Sudan in violation of U.S. sanctions; and just as

in this case, they "allege[d] [BNPP] provided material support to al Qaeda by processing financial transactions for Sudanese banks, converting Sudanese resources into U.S. banknotes, and circumventing U.S. sanctions on Sudan. Those Sudanese banks then sent that U.S. currency to al Qaeda, which used the funds to commit the embassy bombings." *Owens*, 897 F.3d at 269–71 (citation omitted).

We held that the *Owens* appellants could not satisfy proximate causation between BNPP's support of Sudanese banks in 1997 and 1998 and the embassy bombings. *Id.* at 276. We accepted the proposition that appellants established a banking relationship between BNPP and Sudan in the years before the attacks, although appellants spent much of their complaint focused on BNPP's banking relations with Sudan *after* 1997. *Id.* at 273–75. Even so, we held that "Plaintiffs must plausibly allege that any inferred transactions between BNPP and Sudan were 'a "substantial factor" in the sequence of events that led to [Plaintiffs'] injur[ies].'" *Id.* at 275 (alterations in original) (quoting *Rothstein*, 708 F.3d at 91). We found the Second Circuit's case of *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013), with very similar facts instructive. *Owens*, 897 F.3d at 275. Drawing from that case, we reasoned that "when an intermediary is a sovereign state with 'many legitimate agencies, operations, and programs to fund,' the need for additional allegations supporting substantiality is all the more acute." *Id.* at 276 (quoting *Rothstein*, 708 F.3d at 97). We ultimately concluded that "in order to satisfy proximate causation under the ATA, Plaintiffs' complaint needs to adequately plead facts alleging that BNPP substantially contributed to Plaintiffs' injuries because the funds to Sudan 'actually [were] transferred to al Qaeda . . . and aided in' the embassy bombings." *Owens*, 897 F.3d at 276 (alteration in original) (emphasis omitted) (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013)). Because

the *Owens* appellants failed to make any non-conclusory allegations that funds from BNPP were actually transferred to al-Qaeda and aided in the bombings or that the funds were necessary for Sudan to fund the attacks by al-Qaeda, their ATA claim failed for lack of proximate causation. *Owens*, 897 F.3d at 276.

Such is exactly the case here. Appellants do not plausibly allege that *any* money passed from BNPP's financial support of Sudan to al-Qaeda in preparation for the embassy bombings. *See Ofisi*, 278 F. Supp. 3d at 101 ("[T]here are no detailed factual allegations to support . . . [that] BNPP processed U.S. dollar transactions for Al Shamal before the embassy bombings."). Appellants' attempts to differentiate *Owens* are weak, at best. *See* Reply Br. 2–4. Appellants claim "[t]his case is not *Owens* . . ." because the *Owens* appellants only brought claims under the ATA, not the ATS or common law, and because Appellants in this case set forth "materially different" factual allegations than those in *Owens*. Reply Br. 2–3. However, Appellants largely fail to identify *any* major differences between the facts alleged in *Owens* and in their case, choosing instead to regurgitate their allegations and add a conclusory statement that "the allegations of the complaint in this case go well beyond the allegations in the complaint filed in *Owens v. BNP Paribas*." *Id.* at 5. In fact, Appellants still fail to plausibly allege what *Owens* requires—a flow of money between BNPP and al-Qaeda that injured them.

We affirm the district court's dismissal of Appellants' § 2339A(a) ATA claim using the exact words we did in *Owens*: "Plaintiffs' complaint fails to plausibly allege that any currency processed by BNPP for Sudan was either in fact sent to al Qaeda or necessary for Sudan to fund the embassy bombings. [Therefore], Plaintiffs fail to adequately allege that they were injured 'by reason of' BNPP's acts and cannot state a claim for

relief based on a theory of primary liability under the ATA."
*Owens*, 897 F.3d at 276.

### III. Conclusion

For the reasons set forth herein, we affirm the district court on all counts.

*So ordered.*